17MURRAY, J.,
dissenting with reasons.
I find no abuse of discretion in the trial court’s determination that, under these circumstances, a new trial is required in the interests of justice and fundamental fairness.
As the majority notes, Mr. Green’s original, appointed counsel (OIDP) was aware *301 that on October 26, 1994, several weeks after the robbery at issue here, Ms. Washington suddenly reported that Mr. Green was the same man who had robbed her in September 1993. There is no indication, however, that Mr. Green’s trial counsel made any investigation concerning the pri- or crime or the circumstances of this much-delayed “positive identification.” In fact, that 1993 police report shows that both alleged perpetrators had brown eyes, with no notation of any distinctive features. Yet Ms. Washington testified repeatedly at trial that it was Mr. Green’s memorable eyes, which appeared to change from brown to blue to green, that made her certain that he was the robber. Because Mr. Green’s attorney was unaware of these contradictions they could not be put before the jury at trial.
The majority further notes that Mr. Green’s trial counsel failed to discover and/or ensure service of subpoenas on other alibi witnesses, and attributes these failures to “a conscious decision” that some or all of them might be less than helpful. However, trial counsel admitted that he filed no pretrial discovery motions, and testified that with Mr. Dove’s testimony that Mr. Green was at home | ¡>at 9:15 a.m., he saw no need for any additional investigation or witnesses. This suggests to me that an ineffective strategy resulted from trial counsel’s professed reliance on his predecessor’s file, rather than an informed decision concerning witness credibility.
The available information thus establishes that the defense attorney did little to prepare for a trial that was expected to hinge on Mr. Green’s whereabouts at 9:15 a.m. on October 5, 1994. While his preparation may have been adequate under that assumption, the trial was already underway when the foundation of the defense was dangerously weakened. Notwithstanding the prosecutor’s equal surprise when Ms. Washington revealed that she had been robbed at 8:15, I find trial counsel’s failure to protect his client by moving for a mistrial, continuance, or even a recess at that revelation to be inexcusable. Although the attorney subsequently filed a motion for new trial based upon the time discrepancy, this was denied because he offered no additional alibi witnesses for 8:15 a.m.
The prejudicial effect of these accumulated errors was substantial, considering that the only evidence against Mr. Green was the testimony of Ms. Washington. See, e.g., State v. Cavalier, 96-3052 (La.10/31/97), 701 So.2d 949. There is, in my view, more than a reasonable probability of a different outcome if the jury had known that despite the 1993 robbery, Ms. Washington apparently “tolerated” Mr. Green’s subsequent frequent visits to the store and that she failed to tell the police until weeks after the 1994 crime that this was the second time he had robbed her. The importance of such impeachment evidence must be seen as critical once the attempt to present an alibi had been weakened, whether or not the loss of that defense was counsel’s fault.
In granting Mr. Green’s application for post-conviction relief, the trial court stated: “The Court ... finds that this case was comedy of | serror, a true comedy of error and a tragedy of justice.... To allow this conviction to stand as presented at the time would just be fundamentally unfair.” I find no abuse of discretion in this assessment of the circumstances and thus must agree that Mr. Green is entitled to a new trial.